**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ZIPPYSACK LLC and<br>LF CENTENNIAL LIMITED,<br><br>Plaintiffs,<br>v.<br><br>ONTEL PRODUCTS CORP.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 1:15-cv-07510 |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THE
MOTION FOR PRELIMINARY INJUNCTION**

Imron T. Aly
Mir Y. Ali
David Pi
SCHIFF HARDIN LLP
233 South Wacker
Chicago, IL 60606
Tel: (312) 258-5500
Fax: (312) 258-5600
ialy@schiffhardin.com
mali@schiffhardin.com
dpi@schiffhardin.com

Dated: August 26, 2015

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................1

II. FACTUAL BACKGROUND ....................1

III. ARGUMENT ....................5

A. Plaintiffs Are Likely To Succeed On The Merits. ....................5

1. Defendant will infringe valid claims of the ’835 patent ....................6

a. Defendant’s product meets the limitations of the properly construed ‘835 patent claims ....................6

b. The ‘835 patent claims are valid ....................9

B. Plaintiffs Will Be Irreparably Harmed If The Court Does Not Enjoin Defendant. ....................11

C. The Balance Of Hardships Weighs Heavily In Plaintiffs’ Favor. ....................12

D. The Public Interest Favors Granting An Injunction To Protect Plaintiffs’ Patent Rights. ....................13

IV. CONCLUSION ....................14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott Labs. v. Baxter Pharm. Prods., Inc.*, 471 F.3d 1363 (Fed. Cir. 2006) .......... 9

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343 (Fed. Cir. 2001) .......... 6

*Anti-Slip Technologies, Inc. v. Saxon Indus., Inc.*, 513 F. Supp. 835 (S.D.N.Y. 1981) .......... 5

*Arlington Indus. v. Bridgeport Fittings, Inc.*, 2011 WL 2927817 (M.D. Pa. July 18, 2011) .......... 11

*AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042 (Fed. Cir. 2010) .......... 6

*Canon Computer Sys. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085 (Fed. Cir. 1998) .......... 9

*Canon, Inc. v. GCC Intern. Ltd.*, 263 F. App'x 57 (Fed. Cir. 2008) .......... 11

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922 (Fed Cir. 2012) .......... 5, 12

*Eyeticket Corp. v. Unisys Corp.*, 155 F. Supp. 2d 527 (E.D. Va. 2001) .......... 5

*Garvey Corp. v. Barry-Wehmiller Design Group*, 365 F. Supp. 2d 893 (N.D. Ill. 2005) .......... 5

*Glaxo Group Ltd. v. Apotex, Inc.*, 64 F. App'x 751 (Fed. Cir. 2003) .......... 12

*H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384 (Fed. Cir. 1987) .......... 6

*Henkel Corp. v. Coral, Inc.*, 754 F. Supp. 1280 (N.D. Ill. 1991) .......... 12

*Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446 (Fed. Cir. 1988) .......... 11, 13

*In re Cyclobenzaprine*,
676 F.3d 1063 (Fed. Cir. 2012)........................................................................... 10

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
688 F.3d 1342 (Fed. Cir. 2012)........................................................................... 10

*Novo Nordisk A/S v. Caraco Pharm Labs, Ltd.*,
719 F.3d 1346 (Fed. Cir. 2013)........................................................................... 10

*Oakley, Inc. v. Sunglass Hut Int'l*,
316 F.3d 1331 (Fed. Cir. 2003)............................................................................. 9

*Polymer Technologies, Inc. v. Bridwell*,
103 F.3d 970 (Fed. Cir. 1996).............................................................................. 11

*PPG Indus., Inc. v. Guardian Indus. Corp.*,
75 F.3d 1558 (Fed. Cir. 1996).............................................................................. 13

*Sanofi-Synthelabo v. Apotex Inc.*,
470 F.3d 1368 (Fed Cir. 2006)......................................................................... 9, 13

*Thorner v. Sony*,
669 F.3d 1362 (Fed. Cir. 2012)............................................................................. 6

*Titan Tire Corp. v. Case New Holland, Inc.*,
566 F.3d 1372 (Fed. Cir. 2009)............................................................................. 5

**STATUTES**

35 U.S.C. § 282.......................................................................................................... 9

## I. INTRODUCTION

Plaintiff ZippySack LLC is a small Chicago startup that recently launched the "Zippy Sack" product. The product is a one-piece bed covering that helps a child stay enclosed and warm overnight, and to easily make their bed in the morning. Defendant Ontel has recently started offering for sale a copycat product, called Zipit Friends, and is likely soon to directly compete with ZippySack in the major retailer market (such as Walmart and Walgreens). Therefore, along with its licensing partner LF Centennial Limited, ZippySack respectfully seeks a preliminary injunction to preserve the status quo and prevent defendant Ontel Products Corporation from launching through major retailers its infringing children's zipper-bedding product until after a trial on the merits. Plaintiffs request a preliminary injunction because Ontel has given no assurance that it will wait to launch its product at major retailers until after a final decision on the merits in this litigation.

## II. FACTUAL BACKGROUND

ZippySack is a one-employee corporation, whose founder Amer Khan developed and patented a novel children's zipper-bedding product. To solve the problem that children do not make their bed, among other problems, ZippySack's novel zipper-bedding product makes it easy. (Ex. A, A. Khan Decl. ¶¶ 2-3.) The product fits on top of a standard fitted sheet, and includes a zipper that a child need only zip to finish making the bed. Below is a snapshot of the ZippySack product, as shown on ZippySack's website:



(Ex. B, ZippySack website.) One distinctive feature for the ZippySack, in addition to its array of designs, is a one-piece solution that uses one fitted cover which fits on top of a standard fitted sheet. The cover has a zipper as shown on the photo (the strip on the right side of the image), and the zipper is built into the one piece so that it can close on the side, and the cover has an opening cut into the top where a pillow can be placed.

In June 2014, impressed by this novel solution, LF Centennial agreed to distribute the ZippySack product and obtained a license to ZippySack's then-pending patent application covering the product. Together, Plaintiffs successfully were able to launch the ZippySack product through nationwide retailers, including Walmart, Walgreens, where there are already sales, and ZippySack soon will have sales at another national retailer. ZippySack is available today through online direct purchases, of course, but more importantly through the huge retail market through Walmart and Walgreens stores. (Ex. A ¶¶ 5, 9.) ZippySack is ZippySack's one and only product. (*Id.* ¶ 2.)

In December 2014, the Patent Office granted ZippySack U.S. Patent No. 8,898,835 based on ZippySack's pending application. The '835 patent has 12 claims. Claim 1 states as follows:

> 1. An article of bedding comprising:
> a bedding material, having a head end and a foot end, and a first side and a second side that extend from the head end to the foot end, adapted to fit on a mattress, the mattress having an upward facing surface, the upward facing surface positioned upwards when the mattress is in an in-use position;
> an opening, for placement of a pillow, formed in at least one layer of the bedding material, the opening disposed on an upward facing side of the article of bedding when the bedding material is disposed on the mattress and the opening disposed on the upward facing surface of the mattress, the opening having a first side, disposed toward the first side of the bedding material, and a second side, disposed toward the second side of the bedding material; and
> a bedding connection disposed from at least one of the first side and the second side of the opening, extending towards a foot end of the bedding material.

(Ex. C, '835 patent.) The claim has three elements: (1) a bedding material like a sheet, (2) an opening formed in that bedding material, and (3) a bedding connection like a zipper to close the bedding material together.

Defendant Ontel Products is a giant company that markets many different "As Seen on TV" products throughout the country and the world. On its website, Ontel touts that it sells products "in over 80,000 stores in the US, and in over 30 countries worldwide." (Ex. D, Ontel website excerpt.) Ontel further brags that its reach extends "[f]rom small retail chains to mass-market retailers such as Best Buy to larger chains like Walmart & Target," and that "Ontel Products distribution is second to none in the industry." *Id*.

Ontel recently introduced a website, www.Zipit Friends.com, and now offers for sale the infringing "Zipit Friends" product online. (Ex. A ¶ 13.) It is readily apparent that Zipit Friends infringes the '835 patent, although further details and an expert declaration are discussed below. Here is a snapshot of the Zipit Friends product:



(Ex. E, Zipit Friends website.) To date, on information and belief, Ontel has sold only small volumes of its Zipit Friends product in independent stores, including a small toy store in this judicial District. It is believed, however, that Ontel imminently will be using its vast network and self-proclaimed marketing prowess to launch and distribute the infringing Zipit Friends product in Walmart, Walgreens, and other large nationwide retail stores where ZippySack and LF Centennial worked so hard to start the business and build ZippySack product sales. Zipit Friends is believed to have approached Walmart and probably Walgreens, which is not surprising given that Ontel itself identifies its lead "Retail Partners" as Walmart and Walgreens on its own website. (Ex. D.) Defendant therefore imminently threatens the market potential that ZippySack is otherwise poised to earn.

Zipit Friends is a knockoff of ZippySack. Before Zipit Friends, Ontel had sold and still sells a two-piece product, called "Zipit Bedding," comprised of two separate pieces of material attached together with a zipper. (Ex. A ¶ 14; *see also* Ex. G, Zipit Bedding website.) But only ***after*** ZippySack became available, Ontel changed the product design completely to make and sell the one-piece Zipit Friends product. (*Id.*)

If Zipit Friends is not stopped, then ZippySack stands to lose all of the hard work it invested to get this company off the ground and just at the time when it is starting up and enjoying growth in the market. (*Id.* ¶¶ 16-22.) Moreover, ZippySack's licensing partner, LF Centennial, also stands to lose all of the investment it made in manufacturing and distributing the ZippySack product. (*See id.* ¶¶ 6, 8, 20.) The current market opportunity is ZippySack's to earn,

and ZippySack has a patent to protect that opportunity and continue to grow its market share. (*Id*. ¶¶ 4, 7, 9-12.) Ontel should not be allowed to undercut ZippySack's opportunity by launching an infringing copycat product, at this critical time in the company's infancy, thereby justifying a preliminary injunction to preserve the status quo until trial.

## III. ARGUMENT

When deciding whether to preserve the status quo by preliminary injunction for patent infringement, courts consider four factors: (1) likelihood of success on the merits, (2) irreparable harm, (3) balance of hardships, and (4) the public's interest in granting an injunction. *See Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 932 (Fed Cir. 2012). "The decision to grant or deny a preliminary injunction lies within the sound discretion of the district court." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375 (Fed. Cir. 2009). Because the stakes are so high in new markets where a startup company like ZippySack is bringing suit, courts consistently and routinely exercise that discretion to grant preliminary injunctions.[1]

### A. Plaintiffs Are Likely To Succeed On The Merits.

To obtain a preliminary injunction, Plaintiffs must only establish a "reasonable likelihood of success" on the merits. "For a patentee to establish that it is likely to succeed on the merits, it must demonstrate that it will likely prove infringement of one or more claims of the patents-in-suit, and that at least one of those same allegedly infringed claims will also likely withstand the validity challenges presented by the accused infringer." *AstraZeneca LP v. Apotex, Inc.*, 633

---

[1] *See, e.g.*, *Eyeticket Corp. v. Unisys Corp.*, 155 F. Supp. 2d 527 (E.D. Va. 2001) (granting preliminary injunction where business relied exclusively on the patented technology against an alleged infringer that failed to provide any relative harm if the injunction were issued); *Anti-Slip Technologies, Inc. v. Saxon Indus., Inc.*, 513 F. Supp. 835, 838 (S.D.N.Y. 1981) (granting preliminary injunction in favor of a start-up company with a pending patent in a "new and highly profitable field"); *Garvey Corp. v. Barry-Wehmiller Design Group*, 365 F. Supp. 2d 893 (N.D. Ill. 2005) (granting preliminary injunction, taking into consideration that the injunction would not likely "devastate" the defendant's business).

F.3d 1042, 1050 (Fed. Cir. 2010) (internal citations omitted). Thus, Plaintiffs need only establish that at least one claim is likely valid and infringed. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001). Moreover, "[t]he grant of a preliminary injunction does not require that infringement be proved beyond all question, or that there be no evidence supporting the viewpoint of the infringer. The grant turns on the likelihood that [the plaintiff] will meet its burden at trial on proving infringement." *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987).

Plaintiffs are likely to succeed on the merits of its patent infringement claims, for claims 1 and 2 of the '835 patent.

**1. <u>Defendant will infringe valid claims of the '835 patent</u>**

*a. Defendant's product meets the limitations of the properly construed '835 patent claims*

The terms of the '835 patent should be given their plain and ordinary meaning. *E.g.*, *Thorner v. Sony*, 669 F.3d 1362, 1367 (Fed. Cir. 2012). To the extent that Defendant wishes to challenge the construction of any such claim term in its opposition brief, Plaintiffs reserves the right to respond accordingly. Plaintiff retained an independent expert, Dr. David Brookstein, to confirm that the Zipit Friends product infringes the '835 patent.

Dr. Brookstein holds a Doctor of Science in mechanical engineering, and works in the field of textile engineering. (Ex. F, D. Brookstein Decl. ¶ 3.) Over the course of his teaching career, Dr. Brookstein has taught Textile Engineering at Georgia Tech, Philadelphia University, and Montgomery County Community College. (*Id.* at ¶ 6.) Dr. Brookstein is currently a Professor of Mechanical Engineering at Temple University, where he also serves as the Associate Dean for Undergraduate Affairs for the engineering college. (*Id.*) Dr. Brookstein has

other qualifications as shown on his CV and that he discusses in his declaration. (*Id*. at ¶¶ 7-9; Ex. 1 to the Brookstein Decl.).

Defendant literally infringes claims 1 and 2 of the '835 patent. Dr. Brookstein has personally evaluated the Zipit Friends product and based his opinions on that evaluation and other available materials. (*Id*. ¶¶ 10-12.) Dr. Brookstein compared the Zipit Friends product and claims 1 and 2 of the '835 patent, which requires only three elements that Defendant cannot seriously dispute. (*Id*. ¶¶ 17-33.) These are: (1) a bedding material like a sheet, (2) an opening formed in that bedding material, and (3) a bedding connection like a zipper to close the bedding material together. (*Id*. ¶¶ 19-21.) The expert has also reviewed the product description and videos available online, which further confirmed his infringement opinion. (*Id*. ¶ 10.)

For claim construction, it is unlikely that there will be any terms requiring construction, since the claim terms have plain and ordinary meanings, such as "bedding material." To the extent that Ontel argues that any claim term requires construction, ZippySack remains ready and able to argue claim construction terms as needed. But given the straightforward nature of the claim terms, we do not anticipate that there will be a serious dispute as to claim construction either.

Ontel's product meets the first claim limitation, for it has "bedding material" as described in claim 1. (*Id*. ¶ 29.) Ontel's product meets the second claim limitation, as it has an "opening, for placing a pillow, formed in at least one layer of the bedding material." Its product plainly does have an opening at the top of the bed, for that is the very opening cut into the bedding material so that the fitted portion can fit snugly on a bed, while the bedding material can be unzipped to reveal the opening. (*Id*.) That is also plainly shown on the Zipit Friends product

website pictures, for both of two versions of the product (one where the zipper stops short of the top and the other where the zipper goes to the top):

(Ex. E at 2.) And Ontel's product meets the third claim limitation of claim 1, for it has a zipper as a bedding connection as described in claim 1. (Ex. F ¶ 29.)

Both versions of the Zipit Friends product therefore infringe claim 1 because both have an opening for placing a pillow, formed in the layer of bedding material itself. (*Id.*) Both versions of the Zipit Friends product also infringe claim 2, which additional requires an elastic band for forming a fitted sheet, which is also present. (*Id.*) Because the product meets all the limitations of claims 1 and 2, the Zipit Friends product infringes.

At a minimum, Ontel infringes the asserted claims of the '835 under the doctrine of equivalents. That doctrine exists to prevent a company from avoiding a patent in minor or insignificant ways. Any differences are likely to be insubstantial, because the Zipit Friends product uses the same bedding strategy (a one-piece overlay), with the same design (a fitted sheet with a cutout on top), for the same audience (children to make their beds easier). The product achieves substantially the same function, works in substantially the same way, and achieves substantially the same result as the claimed invention.

Based on the review of all information to date, Plaintiffs remain confident that the Zipit Friends product infringes at least claims 1 and 2 of the '835 patent. The parties have exchanged

correspondence, but Ontel labeled the correspondence as a Rule 408 communication. In the abundance of caution, therefore, Plaintiffs do not attach or refer to that letter in this submission. In the event that Ontel responds and contends that the Zipit Friends product does not infringe claims 1 and 2, and/or that the claims are invalid, then Plaintiffs are prepared to respond as needed.

*b. The '835 patent claims are valid*

All issued patents enjoy a presumption of validity by law, as set forth by 35 U.S.C. § 282. This presumption exists and applies at every stage of the litigation, including during a motion for preliminary injunction. *See Sanofi-Synthelabo v. Apotex Inc.*, 470 F.3d 1368, 1375 (Fed Cir. 2006). Consequently, the party opposing an infringement claim carries the heavy burden of showing that a patent is invalid by clear and convincing evidence, and must present evidence of "a substantial question concerning" validity. *See Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339-40 (Fed. Cir. 2003). Indeed, unless Defendant can "identify any persuasive evidence of invalidity, the very existence of the patent satisfies [Plaintiffs'] burden on the validity issue." *Canon Computer Sys. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).

Dr. Brookstein reviewed the prosecution history for the '835 patent and the prior art cited on the face of that patent. (Ex. F ¶ 10.) Any prior art reference could only anticipate a patent claim if all of the claimed features are either expressly disclosed or "necessarily" present in one reference. *Abbott Labs. v. Baxter Pharm. Prods., Inc.*, 471 F.3d 1363, 1368 (Fed. Cir. 2006). But such is not the case here. The '835 patent identifies several references in the "References Cited" section that were either provided to the Patent Office or that the Patent Office found after its search. Based on the review of the available prior art, Dr. Brookstein confirmed that the prior art does not render the claimed invention invalid, and that the Patent Office was correct to issue the '835 patent, including claims 1 and 2. (Ex. F ¶¶ 34-38.)

Similarly, as most infringers, Defendant is likely to argue that the patent is "obvious" even if it is not anticipated. But the '835 patent is not about any bedding with a zipper. (*Id.*) It is tailored for a one-piece solution of a sheet (fitted sheet for claim 2) with an opening cut into the sheet so that it can be placed over an existing sheet. (*Id.* ¶ 36.) Prior art versions of bedding products did not use this one-piece solution and did not have an opening cut into the sheet, instead using multiple sheets so that there was an opening between them. (*Id.* ¶¶ 35-38.) While someone can now try to piece together ZippySack's claimed invention from various prior art references, "obviousness may not be established using hindsight." *Novo Nordisk A/S v. Caraco Pharm Labs, Ltd.*, 719 F.3d 1346, 1361 (Fed. Cir. 2013).

Even if Defendant does attempt to show obviousness, it has the burden also to overcome a number of objective indicia that support a finding of non-obviousness. *In re Cyclobenzaprine*, 676 F.3d 1063, 1078-79 (Fed. Cir. 2012). For example, ZippySack enjoys commercial success based on its immediate launch results, and has a contract in place with international licensee partner LF Centennial and substantial sales at major retailers including Walmart. (Ex. A ¶¶ 6, 8-11.) ZippySack also provides several unexpected benefits, such as the ability to manufacture in a more cost-effective way. (Ex. F ¶ 38.) ZippySack also addresses a long-felt need, since children did not make their bed and other attempts at the solution failed. And Ontel's own copying of the ZippySack solution, even though it used to have a different product, further supports the non-obviousness of the claimed invention. Therefore, "significant objective indicia of nonobviousness strongly weigh against a finding of obviousness." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1370 (Fed. Cir. 2012).

### B. Plaintiffs Will Be Irreparably Harmed If The Court Does Not Enjoin Defendant.

ZippySack is currently available in large retail stores, and is in pole position to establish its market share, just as the Patent Act allows and encourages. Defendant threatens to sell its directly competing and infringing product later this year in the same retail store channels, and that would irreversibly and irreparably harm ZippySack. (Ex. A ¶¶ 16-22.) The Federal Circuit has expressly recognized that allowing an alleged infringer under these circumstances will irreparably alter the marketplace:

> Competitors change the marketplace. Years after infringement has begun, it may be impossible to restore a patentee's (or an exclusive licensee's) exclusive position by an award of damages and a permanent injunction. Customers may have established relationships with infringers. The market is rarely the same when a market of multiple sellers is suddenly converted to one with a single seller by legal fiat.

*Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996). Because of the substantial and irreversible change in market dynamics by letting Defendant infringe, money damages in the future will not adequately compensate Plaintiffs. *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988). ("The patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money.").

If Defendant launches its infringing product, Plaintiffs would suffer price erosion and/or lose market share, neither of which can be undone nor compensated monetarily. (Ex. A ¶¶ 16-22.) When a competitor walks into a market to compete with a patented product, price erosion and market share are both substantial risks that the law does not tolerate. *Canon, Inc. v. GCC Intern. Ltd.*, 263 F. App'x 57, at *4 (Fed. Cir. 2008) (finding competition from defendants would result in price erosion and loss of market share, both irreparable harms). Indeed, any imposition by a "direct competitor" like Defendant "likely deprives [Plaintiffs] of market share, revenue,

and brand recognition." *Arlington Indus. v. Bridgeport Fittings, Inc.*, 2011 WL 2927817, at *10 (M.D. Pa. July 18, 2011). And we know from the pricing of the online product that Ontel intends to try to undercut ZippySack by $10, directly eroding ZippySack's price and undermining Plaintiffs' hard-earned market share. Such a "loss of market share constitutes irreparable injury because market share is so difficult to recover." *Henkel Corp. v. Coral, Inc.*, 754 F. Supp. 1280, 1322 (N.D. Ill. 1991), *aff'd*, 945 F.2d 416 (Fed. Cir. 1991). For these reasons, in *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012), the Federal Circuit recognized that "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."

The extent of Plaintiffs' lost market share also cannot be fully determined, as providing yet another irreparable harm, because Plaintiffs are only now growing their nascent market share with ZippySack, a new product. Defendant's intrusion on Plaintiffs' growing market would cut off Plaintiffs' expected growth. (Ex. A ¶¶ 16-22) These are yet other forms of irreparable injury, because "there is no effective way to measure the loss of sales or potential growth—to ascertain the people who do not knock on the door or to identify the specific persons who do not reorder because of the existence of the infringer." *Celsis*, 664 F.3d at 930.

And these harms do not stop with only product sales. They threaten ZippySack's future as a company. ZippySack LLC has one product, the ZippySack, and if that product is not allowed to achieve its full potential, then the company and those who partnered with it will all suffer. (Ex. A ¶¶ 2, 19.) The company may be driven out of business by the likes of Ontel, a huge international conglomerate that does not care if ZippySack survives or not. Money alone could never compensate for these losses.

### C. The Balance Of Hardships Weighs Heavily In Plaintiffs' Favor.

The third injunction factor—the balance of hardships—also weighs clearly in Plaintiffs'

favor. The irreparable harm to Plaintiffs dwarfs the alleged hardship Defendant could face: Defendant would sell product later rather than sooner, even if it succeeds at trial. Such delayed sales do not rise to the level of irreparable harm. *E.g.*, *Glaxo Group Ltd. v. Apotex, Inc.*, 64 F. App'x 751, 756 (Fed. Cir. 2003) (balance of hardships favors patentee where competitor "would only lose the ability to go on the market and begin earning profits earlier").

This is not a case where Defendant would be caused potential harm by having to pull a product already on the market that is already available through major retailers. To the contrary, to the best of Plaintiffs' knowledge, Ontel has only made a limited number of Zipit Friends sales through its website and through some regional specialty stores, but not through any major retailer. Once Zipit Friends opens the door to a major retailer, it cannot be closed again, and ZippySack will lose its opportunity despite its investment in a patent and in developing and marketing a novel product.

### D. The Public Interest Favors Granting An Injunction To Protect Plaintiffs' Patent Rights.

The final factor to consider—the public's interest—also weighs in favor of granting a preliminary injunction. Indeed, in patent cases, there is from the start a statutory public interest to protect a patentee like Plaintiffs because of the "strong public policy favoring the enforcement of patent rights." *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996). Thus, the inquiry should be "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech Inc.*, 849 F.2d at 1458.

Yet the only harm to the public interest, as discussed above, would be if Defendant were allowed to launch the product, inhibiting a company like ZippySack from continuing its nascent mission to develop products for children. (Ex. A ¶ 22.) Without a preliminary injunction, the right to exclude is meaningless. *See Sanofi-Synthelabo*, 470 F.3d at 1383 ("Indeed, the

encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.") (internal citations omitted). On the other hand, there is no public interest in allowing Defendant's product to launch and destroy Plaintiffs' market share.

## IV. CONCLUSION

For all the above reasons, and to maintain the status quo in the absence of a statutorily imposed stay, Plaintiffs respectfully requests that the Court enter a preliminary injunction that prevents Defendant from launching its infringing Zipit Friends product before final judgment on the merits.

Dated: August 26, 2015

SCHIFF HARDIN LLP

*/s/* Imron T. Aly
Imron T. Aly
Mir Y. Ali
David Pi
SCHIFF HARDIN LLP
233 South Wacker
Chicago, IL 60606
Tel: (312) 258-5500
Fax: (312) 258-5600
ialy@schiffhardin.com
mali@schiffhardin.com
dpi@schiffhardin.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on August 26, 2015, the foregoing *Plaintiffs' Opening Brief in Support of the Motion for Preliminary Injunction* was filed electronically with the Clerk of Court using the ECF system, and served by hand delivery through a process server on August 27, 2015 upon the following:

John S. Artz
2600 West Big Beaver Road, Suite 300
Troy, MI 48084-3312
JSArtz@dickinsonwright.com
*Attorney for Defendant*

Ashok Khubani
Ontel Products Corporation
21 Law Drive, Fairfield, NJ 07004

*Defendant's Registered Agent*

/s/ Imron T. Aly